

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-25-00641-CV

**IN THE INTEREST OF H.R.J.**, J.G.J., T.J.P., and L.P., Children

From the 365th Judicial District Court, Zavala County, Texas
Trial Court No. 24-02-15329-ZCVAJA
Honorable Amado J. Abascal III, Judge Presiding

Opinion by:   Irene Rios, Justice

Sitting:   Irene Rios, Justice
Adrian A. Spears II, Justice
Velia J. Meza, Justice

Delivered and Filed: April 15, 2026

AFFIRMED

Appellant Mother appeals the trial court's order terminating her parental rights to her children, H.R.J., J.G.J., T.J.P., and L.P.[1]  In her first and second issues, Mother challenges the sufficiency of the evidence supporting termination of her parental rights under statutory grounds (D) and (E).  In her third issue, Mother challenges the sufficiency of the evidence supporting the trial court's finding that termination was in the children's best interests.  We affirm.

---

[1] To protect the identity of minor children in an appeal from an order terminating parental rights, we refer to the children's mother as "Mother," we refer to L.P.'s father as "Father J.M.," and we refer to the children using their initials or as "the children."  *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).  The trial court's order also terminated the fathers' rights to their respective children; however, the fathers do not appeal.

BACKGROUND

The Department became involved in the underlying case when it received a referral Mother was abusing drugs and had left L.P. with his father while there was a protective order in place protecting L.P. from the father. At the time, Mother had already had her children removed by the Department three times because of her drug addiction. Initially, the Department could not locate Mother and discovered the older three children were staying with their maternal aunt ("Aunt") and uncle ("Uncle"). The Department sought removal of the children after Mother tested positive for illegal drugs.

On February 22, 2024, the Department filed a petition seeking termination of Mother's parental rights. The trial court held a four-day bench trial on July 18, 2025, September 9, 2025, September 24, 2025, and concluding on October 2, 2025. The trial court heard testimony from Veronica Orosco, the Department's removal investigator; Carlos Piliado, a permanency specialist with the Department;[2] Father J.M., L.P.'s father; Aunt; Lorenzo Ortiz, Mother's counselor; and Mother.

On March 25, 2024, the trial court signed an order terminating Mother's parental rights to the children. The trial court terminated Mother's parental rights based on statutory grounds (D) and (E) in subsection 161.001(b)(1) of the Texas Family Code. *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1)(D), (E). The trial court also found it was in the children's best interests to terminate Mother's parental rights. *See id.* § 161.001(b)(2). Mother appeals.

---

[2] Carlos Piliado is employed by SJRC Texas Belong, a community-based care provider contracted by the Department. We refer to Piliado as the Department's caseworker because SJRC Texas Belong is a contractor working on behalf of the Department.

**STATUTORY REQUIREMENTS AND STANDARD OF REVIEW**

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b). Clear and convincing evidence requires "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007.

When reviewing the sufficiency of the evidence, we apply well-established standards of review. *See id.* §§ 101.007, 161.206(a); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (conducting a factual sufficiency review); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (conducting a legal sufficiency review).

"In reviewing the legal sufficiency of the evidence to support the termination of parental rights, we must 'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.B.*, No. 04-17-00364-CV, 2017 WL 4942855, at *2 (Tex. App.—San Antonio Nov. 1, 2017, pet. denied) (mem. op.) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *J.F.C.*, 96 S.W.3d at 266. "A corollary to this requirement is that a [reviewing] court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.*

"In reviewing the factual sufficiency of the evidence to support the termination of parental rights, we 'must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing.'" *J.L.B.*, 2017 WL 4942855, at *2 (quoting *J.F.C.*, 96 S.W.3d at 266).

"A [reviewing court] should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *J.F.C.*, 96 S.W.3d at 266. "The [reviewing] court must hold the evidence to be factually insufficient if, in light of the entire record, the disputed evidence contrary to the judgment is so significant that a reasonable factfinder could not have resolved that disputed evidence in favor of the ultimate finding." *In re M.T.C.*, No. 04-16-00548-CV, 2017 WL 603634, at *2 (Tex. App.—San Antonio Feb. 15, 2017, no pet.) (mem. op.).

Further, in a bench trial, the trial court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *In re J.F.-G.*, 627 S.W.3d 304, 312, 317 (Tex. 2021). This is because "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.—Austin 2014, no pet.) (quoting *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). We, therefore, defer to the trial court's factual determinations and judgment regarding credibility. *J.F.-G.*, 627 S.W.3d at 312; *see also In re R.R.A.*, 687 S.W.3d 269, 279 n.50 (Tex. 2024) ("Reviewing courts, however, must defer to the factfinder's judgment as to the credibility of the witnesses and the weight to give their testimony, including reasonable and logical inferences from the evidence.").

### STATUTORY GROUNDS FOR TERMINATION

In her first and second issues, Mother argues there is insufficient evidence to support the trial court's findings under statutory grounds (D) and (E).

Only one predicate ground finding under section 161.001(b)(1) is necessary to support a termination judgment when there is also a finding that termination is in the child's best interest.

*In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Therefore, our analysis is usually complete if we conclude that the evidence is sufficient to support any single predicate ground. Because the findings under subsection 161.001(b)(1)(D) and (E) have consequences for termination of parental rights as to other children, termination on these grounds implicates significant due process concerns for Mother. TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (M); *In re N.G.*, 577 S.W.3d 230, 234 (Tex. 2019). Due process requires us to review the trial court's findings under both subsections 161.001(b)(1)(D) and (E) of the Texas Family Code. *See N.G.*, 577 S.W.3d at 235–36; *see also R.R.A.*, 687 S.W.3d at 279 ("Although termination under (P) is sufficient to reverse the judgment of the court of appeals, we must also review termination under subsections (D) and (E) because a finding of termination under those grounds may justify termination of parental rights to other children in subsection (M)."); *In re J.W.*, 645 S.W.3d 726, 748 (Tex. 2022) ("[W]e may not bypass Father's evidentiary challenges to [s]ubsections (D) and (E) . . . because termination of a parent's rights under either can serve as a ground for termination of his rights to *another* child.").

Here, the trial court determined from the evidence that Mother "knowingly placed or knowingly allowed the child[ren] to remain in conditions or surroundings which endanger the physical or emotional well-being of the child[ren] . . . [and] engaged in conduct or knowingly placed the child[ren] with persons who engaged in conduct which endangers the physical or emotional well-being of the child[ren] . . . ." *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E). To endanger a child under subsections (D) and (E) means to expose the child to loss or injury or to jeopardize the child's emotional or physical health. *See J.W.*, 645 S.W.3d at 748; *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). "Although endanger means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal

family environment, it does not require that there be conduct directed at the child or that the child actually suffer injury." *J.W.*, 645 S.W.3d at 748 (internal quotation marks and alterations omitted).

Though both subsections (D) and (E) focus on endangerment, they differ regarding the source and proof of endangerment. *In re A.B.R.*, No. 04-19-00631-CV, 2020 WL 1159043, at *2 (Tex. App.—San Antonio Mar. 11, 2020, pet. denied) (mem. op.). Subsection (D) concerns the child's living environment, rather than the conduct of the parent, though parental conduct is certainly relevant to the child's environment. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). Under subsection (E), the cause of the endangerment must be the parent's conduct and must be the result of a conscious course of conduct rather than a single act or omission. *Id.*

"While illegal drug use alone may not be sufficient to show endangerment, a pattern of drug use accompanied by circumstances that indicate related dangers to the child can establish a substantial *risk* of harm." *R.R.A.*, 687 S.W.3d at 278. "A reviewing court should not evaluate drug-use evidence in isolation; rather it should consider additional evidence that a factfinder could reasonably credit that demonstrates that illegal drug use presents a risk to the parent's 'ability to parent.'" *Id.*

*Statutory Ground (D)*

Subsection (D) allows for termination of parental rights if the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(D). The child's "environment" encompasses the suitability of the child's living conditions and the conduct of parents or others in the home. *S.R.*, 452 S.W.3d at 360. "Inappropriate, abusive, or unlawful conduct by a parent or other persons who live in the child's home can create an environment that

endangers the physical and emotional well-being of a child as required for termination under subsection D." *In re A.L.S.*, 660 S.W.3d 257, 271 (Tex. App.—San Antonio 2022, pet. denied) (alteration omitted). "[A] parent need not know for certain that the child is in an endangering environment; awareness of such a potential is sufficient." *In re R.S.-T.*, 522 S.W.3d 92, 109 (Tex. App.—San Antonio 2017, no pet.). Subsection (D) permits termination based upon only a single act or omission. *In re R.D.*, 955 S.W.2d 364, 367 (Tex. App.—San Antonio 1997, pet. denied).

Under Subsection (D), the trial court examines "evidence related to the environment of the child[] to determine if the environment was the source of endangerment to the [child's] physical or emotional well-being." *J.T.G.*, 121 S.W.3d at 125. Parental conduct, however, is a factor that contributes to the child's environment. *Id.* The time period relevant to a review of conduct and environment under statutory ground (D) is prior to the child's removal. *In re J.R.*, 171 S.W.3d 558, 569 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

*Statutory Ground (E)*

Subsection (E) permits termination if the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(E). The trial court must determine "whether evidence exists that the endangerment of the child's physical well-being was the direct result of [the parent's] conduct, including acts, omissions, or failures to act." *In re M.E.-M.N.*, 342 S.W.3d 254, 262 (Tex. App.—Fort Worth 2011, pet. denied). "Courts may further consider parental conduct that did not occur in the child's presence, including conduct before the child's birth or after he was removed from a parent's care." *A.B.R.*, 2020 WL 1159043, at *3. "[E]ndangering conduct is not limited to actions directed towards the child." *J.OA.*, 283 S.W.3d at 345.

"Conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child." *In re D.F.S.*, No. 04-20-00441-CV, 2021 WL 603364, at *4 (Tex. App.—San Antonio Feb. 17, 2021, pet denied) (mem. op.). "Thus, evidence of illegal drug use by a parent and its effect on a parent's life and her ability to parent may establish an endangering course of conduct under subsection (E)." *Id.*

*Analysis*

Because Mother's course of conduct caused instability in the children's lives and thereby exposed them to an endangering environment, we analyze statutory grounds (D) and (E) together.

Here, the trial court heard testimony that Mother tested positive for methamphetamines while she was caring for the children. *See In re J.A.B.*, No. 04-23-00907-CV, 2024 WL 1421986, at *2 (Tex. App.—San Antonio Apr. 3, 2024, pet. denied) (mem. op.) ("Parental and caregiver illegal drug use and drug-related criminal activity likewise support[] the conclusion that the children's surroundings endanger their physical or emotional well-being."). Carlos Piliado, the Department's caseworker, testified that Mother was placed on community supervision for a prior conviction. When she appeared under the influence of drugs to her probation officer, Mother was given the choice to check into a rehabilitation center or go to prison. Mother checked into rehab and left the three oldest children with Aunt and Uncle and left L.P. with his paternal grandmother. The removal investigator testified the Department removed the children because Mother's drug use posed a danger to the children. The trial court also heard testimony that Mother has had an ongoing struggle with drug addiction, and this was the fourth time the children were removed because of Mother's drug use. *See R.R.A.*, 687 S.W.3d at 278 ("[A] pattern of parental behavior that presents a substantial risk of harm to the child permits a factfinder to reasonably find endangerment."); *D.F.S.*, 2021 WL 603364, at *4 ("[A] pattern of drug abuse will support a finding

of conduct endangering a child even if there is no evidence that the drug use injured the child."). Piliado testified the two oldest children are emotionally exhausted from going through the removal process. One of them told Piliado they "just want for this to be over" so that they can be adopted by Aunt and Uncle.

The trial court could have reasonably concluded Mother's repeated relapses created an environment that endangered the emotional well-being of the children because it exposed them to the emotionally draining process of removal four different times. *See In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009) ("[E]ndangering conduct is not limited to actions directed towards the child."); *In re A.A.M.*, 464 S.W.3d 421, 426 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ("Drug abuse and its effect on the ability to parent can be part of an endangering course of conduct."). And the trial court heard testimony that Mother relapsed again approximately five months after the children were removed in this case. *See A.L.S.*, 660 S.W.3d at 271 ("Evidence that a parent continued to use illegal drugs even though the parent knew her parental rights were at risk is conduct showing a voluntary, deliberate, and conscious course of conduct, which by its nature endangers a child's well-being."). When she relapsed again, her community supervision was revoked, and she was incarcerated for nine months while this case was pending. *See A.A.M.*, 464 S.W.3d at 426 ("Illegal drug use creates the possibility that the parent will be impaired or imprisoned and thus incapable of parenting.").

Based on this evidence, the trial court could have reasonably inferred that Mother's continued struggle with drug abuse affects her ability to parent, especially considering the frequency of Mother's relapses and the Department's involvement in the children's lives. Thus, the trial court could have formed a firm belief or conviction that Mother's course of conduct endangered the children's physical and emotional well-being and that the instability from the

repeated removals, caused by Mother's numerous relapses, exposed the children to an endangering environment. This is even more evident when we consider the two oldest children told the removing investigator they were concerned Mother was back on drugs because the children recognized Mother's behavior from when she used drugs in the past.

The trial court also heard testimony that Father J.M. previously broke into Mother's home and assaulted her while the children were present. Following this incident, Mother obtained a protective order against Father J.M. for herself and the children. Despite this protective order, Mother left L.P. with his paternal grandmother even though Father J.M. was living there. Thus, Mother left one of her children with a person against whom she and the child had a protective order because he assaulted her in front of the children. The trial court also heard testimony that Father J.M. was arrested for possession of a controlled substance after Mother left L.P. with paternal grandmother, but before the petition for removal was filed, indicating Father J.M. may have possessed drugs while he and L.P. were living in the same home. Mother's decision to leave L.P. in the same home that Father J.M. resided is also evidence supporting the trial court's endangerment findings. *See R.R.A.*, 687 S.W.3d at 278 ("[A] pattern of drug use accompanied by circumstances that indicate related dangers to the child can establish a substantial *risk* of harm."); *see also J.O.A.*, 283 S.W.3d at 345 ("[E]ndangering conduct is not limited to actions directed towards the child.").

Having reviewed the record and considered all the evidence in the appropriate light for each standard of review, we conclude the trial court could have formed a firm belief or conviction that Mother "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child . . . [and] engaged in conduct . . . which endangers the physical or emotional well-being of the child." TEX. FAM.

CODE ANN. § 161.001(b)(1)(D), (E); *see also H.R.M.*, 209 S.W.3d at 108; *J.P.B.*, 180 S.W.3d at 573. Therefore, we hold the evidence is legally and factually sufficient to support the trial court's subsection (D) and (E) findings.

Accordingly, Mother's first and second issues are overruled.

### BEST INTEREST

In her third issue, Mother argues the evidence is legally and factually insufficient to support a finding that termination of her parental rights is in the children's best interests.

When considering the best interest of a child, we recognize the existence of a strong presumption that the child's best interest is served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, we also presume that prompt and permanent placement of the child in a safe environment is in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a).

In determining whether a parent is willing and able to provide the child with a safe environment, we consider the factors set forth in section 263.307(b) of the Texas Family Code.[3]

---

[3] These factors include:

> (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child [or] the child's parents . . . ; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills . . . ; and (13) whether an adequate social support system . . . is available to the child.

TEX. FAM. CODE ANN. § 263.307(b).

*See id.* § 263.307(b). We also consider the *Holley* factors.[4]  *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors are not exhaustive. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). "The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *Id.* In analyzing these factors, we must focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't of Protective & Regul. Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ).

Evidence that proves one or more statutory ground for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.H.*, 89 S.W.3d at 28 (holding same evidence may be probative of both section 161.001(b)(1) grounds and best interest, but such evidence does not relieve the State of its burden to prove best interest). "A best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence." *See In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). "A trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest." *Id.*

The evidence supporting the endangerment grounds also supports the trial court's best interest findings. "Illicit drug use is relevant to multiple *Holley* factors, including the children's emotional and physical needs now and in the future, the emotional and physical danger to the children now and in the future, Mother's parental abilities, the stability of Mother's home, and the

---

[4] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see also In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013).

acts or omissions which may indicate an improper parent-child relationship." *In re A.N.*, No. 04-19-00584-CV, 2020 WL 354773, at *3 (Tex. App.—San Antonio Jan. 22, 2020, no pet.) (mem. op.). As mentioned in the statutory grounds section, Mother has had an extensive past with drug abuse and has repeatedly relapsed into drug use causing the Department to intervene and remove the children on four separate occasions. "Continued illegal drug use by the parent is conduct that jeopardizes parental rights and may be considered as establishing an endangering course of conduct, and that termination is in the best interest of the child." *In re J.S.R.*, No. 04-21-00517-CV, 2022 WL 1559107, at *4 (Tex. App.—San Antonio May 18, 2022, pet. denied) (mem. op.) (alterations omitted).

Here, the children were previously removed three different times before the removal in this case because of Mother's ongoing drug addiction. Before the children were removed in this case, Mother appeared to be on drugs when she checked in with her probation officer. Mother was given a choice to go to a rehabilitation center or go to jail. Mother chose to go to rehab. Although Mother left the three older children in Aunt and Uncle's care, she left L.P. in the same home that Father J.M. resided. As mentioned above, the trial court could have concluded leaving L.P. in that home endangered L.P. Mother tested positive for methamphetamines, and the Department removed the children for a fourth time, placing them in Aunt and Uncle's care. Commendably, Mother successfully completed a ninety-day stint at the rehabilitation center and moved to a sober living home in May 2024. However, Mother left the sober living home for three days in July 2024 and relapsed into drug use again. Piliado testified when Mother attempted to return to the sober living home, she was unsuccessfully discharged and was taken to the hospital because her condition was so poor. Because Mother's drug use violated a condition of her community supervision, her community supervision was revoked and she was incarcerated from July 2024 to

April 2025. *See In re G.V.S.*, No. 04-18-00563-CV, 2018 WL 6624398, at *4 (Tex. App.—San Antonio Dec. 19, 2018, pet. denied) (mem. op.) ("A parent's criminal activities and history are also relevant to a best interest analysis—specifically to the emotional and physical danger to the child."); *In re R.M.H.*, No. 04-23-00765-CV, 2023 WL 8103188, at *4 (Tex. App.—San Antonio Nov. 22, 2023, no pet.) (mem. op.) ("[R]outinely subjecting a child to the probability that [the child] will be left alone because [the child's] parent is in jail endangers the child's physical and emotional well-being.") As a condition of her release, Mother was sent to a second rehabilitation center where she was successfully discharged after twenty-six days. Admirably, Mother has tested negative for drugs since her release from prison.

Mother argues her recent sobriety indicates termination of her parental rights is not in the best interest of her children. Although the trial court acknowledged that Mother may have turned the corner on her drug addiction and commended her on her success, it nevertheless concluded that Mother's propensity to relapse poses a continuing danger to the children. *See E.D.*, 419 S.W.3d at 620 ("A trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest."). We cannot fault the trial court for its reasoning. *See* TEX. FAM. CODE ANN. § 263.307(b)(2) (providing the trial court should consider "the frequency and nature of out-of-home placements" when determining whether the parent is willing and able to provide the child with a safe environment.). "While the recent improvements made by [a parent] are significant, evidence of improved conduct, especially of short-duration, does not conclusively negate the probative value of a long history of drug use and irresponsible choices." *J.O.A.*, 283 S.W.3d at 346 (rejecting a court of appeals' analysis that attributed greater weight to a parent's recent improvements than the long history of drug abuse in its legal sufficiency review). We also note that Mother's relapses were not limited to past cases

and the initiation of this case; rather, Mother relapsed into drug use approximately five months after the children were removed in this case. This relapse led to her incarceration which precluded her from having in-person visitation for nine months. Notwithstanding Mother's recent sobriety, Piliado testified he believed termination is in the children's best interests because Mother has failed to care for the children multiple times and Mother's actions have repeatedly disrupted the children's lives. According to Piliado, termination would allow "the children an opportunity to grow in a caring and loving environment" in contrast to the repeated instability from the multiple removals caused by Mother's repeated relapses into drug use.

The children were fifteen, fourteen, ten, and six at the time of trial. The trial court heard testimony that the two older children were frustrated with the repeated removals caused by Mother's drug addiction. Every time the children have been removed, they have been placed with Aunt and Uncle. Aunt testified that she has cared for the children for the last five and a half years throughout the four removals. The longest period of time Mother had the children over that period was three months before this latest removal. The two oldest children told Piliado that they do not want to be reunified with Mother and would like to be adopted by Aunt and Uncle. One of the children told Piliado that he "just wanted for this to be over, that he had been going through this too many times and that all he wanted was to be adopted by [Aunt and Uncle]." Per their request, the trial court conducted an in-chamber interview with the two oldest children prior to rendering its ruling. During its oral rendition, the trial court noted the children have expressed their desires to remain in their current placement with the hope of being adopted by Aunt and Uncle.

Piliado testified Aunt and Uncle are meeting the children's needs, they are doing great in school since coming into Aunt and Uncle's care, and the older children are "very engaged" in extracurricular activities. Aunt confirmed she and Uncle have cared for the children, taking them

to school, school functions, and doctor's appointments, and have provided clothing, shelter, and food over the last five and a half years. In contrast, Piliado stated Mother is not able to provide for the children's basic needs. According to Piliado, Mother has been given multiple opportunities to show she can care for the children but, "unfortunately, she has not been able to do that." Piliado's opinion is supported by evidence showing that Mother did not obtain housing until after the trial began, and only obtained employment during the last week of trial. Piliado stated the children have been through this process so many times and they need a safe, stable home to achieve permanency. Piliado reasserted the children have expressed a desire to maintain the stability they experience with Aunt and Uncle. He stated the children want to remain with Aunt and Uncle because they feel safe and secure there.

The Department's permanency goal for the children is relative adoption by Aunt and Uncle. The trial court heard testimony that the children are bonded with one another, and it was in their best interests to keep them together. Aunt confirmed she and Uncle desire to adopt the children and have renovated their home to make room for all four children.

While we join the trial court in commending Mother's recent sobriety, we cannot ignore the long history of substance abuse that has wreaked havoc on the children's lives. Nor can we conclude the trial court's concern—that Mother may relapse again further exposing the children to future harm—is unreasonable given Mother's past patterns of recovery and relapse. Mother made several efforts to achieve reunification while the case was pending. But this does not negate the probative value of evidence showing she relapsed during this case, especially when considering the children were removed multiple times in the past because of Mother's frequent relapses. We conclude the trial court could have reasonably formed a firm belief or conviction that there was an unacceptable risk that Mother's drug addiction would continue to render her unable to provide for

the children. *See* TEX. FAM. CODE ANN. § 263.307(b)(8) (stating a parent's history of substance abuse is a factor considered by the trial court in determining whether the parent is able to provide the child with a safe environment). We also cannot ignore the children's desires to be adopted by Aunt and Uncle so that they may experience a life of stability in a safe and loving environment.

Having reviewed the record and considered all the evidence in the appropriate light for each standard of review, we conclude the trial court could have formed a firm belief or conviction that termination of Mother's parental rights was in the children's best interests. *See id.* § 161.001(b)(2); *H.R.M.*, 209 S.W.3d at 108; *J.P.B.*, 180 S.W.3d at 573; *see also generally In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (recognizing a reviewing court need not detail the evidence if affirming a termination judgment). Therefore, we hold the evidence is legally and factually sufficient to support the trial court's best-interest findings.

Accordingly, Mother's third issue is overruled.

#### CONCLUSION

We affirm the trial court's order terminating Mother's parental rights to the children.

Irene Rios, Justice